Mr. Michael S. Davis City Attorney City of St. Petersburg Post Office Box 2842 St. Petersburg, Florida 33731
Dear Mr. Davis:
You ask the following questions:
1) Are commercial horse-drawn carriages subject to the State Uniform Traffic Control Law, Chapter 316, Florida Statutes?
2) If the previous question is answered in the affirmative, may commercial horse-drawn carriage operations be banned from operation on streets within the city for reasons other than those set forth in section 316.008, Florida Statutes?
3) If commercial horse-drawn carriages are not subject to Chapter 316, Florida Statutes, may the city ban such operations on its streets?
In sum, I am of the opinion:
1) Commercial horse-drawn carriages are subject to the State Uniform Traffic Control Law, Chapter 316, Florida Statutes.
2) Commercial horse-drawn carriage operations may not be banned from operation on streets within the city except as provided in section 316.008, Florida Statutes, or other provision of state law.
3) In light of the response to Question One, it is unnecessary to respond to your third question.
Question One
The Florida Uniform Traffic Control Law, Chapter 316, Florida Statutes, was enacted "to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities."[1] In order to ensure that the provisions of Chapter 316, Florida Statutes, are given uniform application throughout the state, s. 316.002, F.S., provides that "[i]t is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter."[2]
In Attorney General Opinion 80-80 this office concluded that the use of public streets by horses, either ridden or driven, was covered by the Uniform Traffic Control Law. Such a conclusion was based upon an examination of various provisions of Chapter 316, Florida Statutes. For example, "traffic" is defined for purposes of Chapter 316, Florida Statutes, to mean "[p]edestrians, ridden or herded animals, and vehicles, streetcars, and other conveyances either singly or together while using any street or highway for purposes of travel."[3] Section 316.073, Florida Statutes, expressly states that every person riding an animal or driving an animal-drawn vehicle upon a roadway shall be subject to the provisions of Chapter 316, Florida Statutes, applicable to the driver of a vehicle, except those provisions which by their very nature can have no application.[4]
Sections 316.2225(7) and 316.231, Florida Statutes, specify the type of equipment required on animal-drawn vehicles. Thus, this office concluded that the use of public streets of a municipality by horses, ridden or driven, at least upon that portion of the street used for vehicular traffic, is uniformly regulated and preempted to the state by Chapter 316, Florida Statutes. I am not aware of any provision which distinguishes between commercial horse-drawn carriages and other animal-drawn conveyances. Accordingly, the conclusion reached in Attorney General Opinion 80-80 would appear to be equally applicable to the instant inquiry. I am, therefore, of the opinion that commercial horse-drawn carriages are subject to the State Uniform Traffic Control Law, Chapter 316, Florida Statutes.
Question Two
In Attorney General Opinion 80-80 this office concluded that as the use of public streets of a municipality by horses, ridden or driven, is regulated and preempted by Chapter 316, Florida Statutes, a municipality may not regulate or prohibit such traffic on the streets within its jurisdiction unless expressly authorized to do so.[5] The Legislature, however, has recognized:
[T]here are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside of such municipalities. Section 316.008 enumerates the area within which municipalities may control certain traffic movements or parking in their respective jurisdictions.[6]
Chapter 316, Florida Statutes, therefore, does not prevent local authorities,[7] within the reasonable exercise of their police powers, from regulating those areas enumerated in section 316.008, Florida Statutes, on the streets and highways within their jurisdiction.[8] Sections 316.008, Florida Statutes, authorizes a municipality, among other things, to regulate or prohibit stopping, standing, or parking, or to prohibit or regulate the use of heavily traveled streets by any class or kind of traffic found to be incompatible with the normal and safe movement of traffic.[9]
In light of the authority granted under section 316.008, Florida Statutes, this office has stated that under certain conditions and in the reasonable and nondiscriminatory exercise of its police power, a municipality may regulate or prohibit the use of certain streets within the municipality by any class or kind of traffic. Such limited authority, however, does not empower a municipality to absolutely bar or prohibit the riding or driving of horses or horse-drawn vehicles on all streets of the municipality or to unreasonably discriminate against such use of the public streets within the municipality.[10] Thus, there may be certain heavily traveled streets within a municipality where the use of horse-drawn carriages may be incompatible with the normal and safe movement of traffic; however, a municipality would appear to be precluded from prohibiting such carriages on all streets under its jurisdiction.
I am, therefore, of the opinion that commercial horse-drawn carriage operations may not bebanned from operation on streets within the city except as provided in section 316.008, Florida Statutes, or other provision of state law.
Question Three
In light of the response to Question One, it is unnecessary to respond to your third question.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 316.002, Fla. Stat. And see, the preamble to Ch. 71-135, Laws of Florida, creating Ch. 316, Fla. Stat., in which the Legislature recognized that the movement of traffic had theretofore been controlled by "a hodgepodge of ordinances" which varied as to language and penalty and which caused an inconvenience and hazard to travelers.
[2] And see, s. 316.007, Fla. Stat., providing that "no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized." See also, s.166.021, Fla. Stat., which grants municipalities broad home rule powers except on matters expressly prohibited by law or when the subject matter is expressly preempted to the state by general law.
[3] Section 316.003(57), Fla. Stat.
[4] See, s. 316.003(42) and (53), Fla. Stat., respectively defining "[r]oadway" and "[s]treet or highway." And see, s.316.003(75), Fla. Stat., defining "vehicle" as "[e]very device, in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks."
[5] See also, Op. Att'y Gen. Fla. 77-84 (1977) (municipality prohibited regulating mopeds or moped drivers except as authorized by Ch. 316, Fla. Stat.); Op. Att'y Gen. Fla. 74-361 (1974) (municipality may not regulate hitchhiking unless expressly authorized to do so by the Legislature).
[6] Section 316.002, Fla. Stat.
[7] See, s. 316.003(20), Fla. Stat., defining "[l]ocal authorities"to include all officers and public officials of the several counties and municipalities of this state.
[8] See, s. 316.006(2)(a), Fla. Stat., providing that chartered municipalities have original jurisdiction over all streets and highways located within their boundaries, except state roads.
[9] See, s. 316.008(1)(a) and (n), Fla. Stat. See also, s.316.008(g),(m), and (p), Fla. Stat., authorizing municipalities to respectively restrict the use of streets, prohibit or regulate the use of controlled access roadways by any class or kind of traffic, designate or regulate traffic on play streets.
[10] Attorney General Opinion 80-80.